# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK TIGER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC. and VERIZON PENNSYLVANIA LLC,<br><br>    Defendants. | Case No. 2:23-cv-01618-NR<br><br>Judge J. Nicholas Ranjan |

### PLAINTIFF'S SUPPLEMENTAL BRIEF

Plaintiff Mark Tiger submits this supplemental brief per the Court's order permitting supplemental briefing. ECF No. 49.

**I.    Mr. Tiger's Standing Is Determined by the Facts as They Existed at the Time of the Complaint.**

Verizon is mistaken when it argues that Mr. Tiger's change in employment may both deprive him of standing to sue and moot his claims for prospective relief. Rather, Mr. Tiger's standing to sue is solely determined by the facts as they existed at the time of the filing of the complaint, and his subsequent change in employment is relevant only to the issue of mootness.[1]

"Standing and mootness are two distinct justiciability doctrines." *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020).[2] "At the start of litigation, the burden rests on the plaintiff, as the party invoking federal jurisdiction, to show its standing to sue." *Id.* at 305. "But once the plaintiff shows standing at the outset, she need not keep doing so throughout the

---

[1] As discussed in later sections of this brief, Mr. Tiger's claims are not moot.

[2] Unless otherwise noted, all citations omit internal citations, quotations, and alternations.

lawsuit." *Id.* "Instead, the burden shifts. If the defendant (or any party) claims that some development has mooted the case, it bears the heavy burden of persuading the court that there is no longer a live controversy." *Id.* at 305-306. Put differently, "unlike standing, mootness is determined at the time of the court's decision (rather than at the time the complaint is filed)." *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 374 (W.D. Pa. 2020) (Ranjan, J.).

This distinction between standing and mootness matters because "sometimes a suit filed on Monday will be able to proceed even if, because of a development on Tuesday, the suit would have been dismissed for lack of standing if it had been filed on Wednesday." *Hartnett*, 963 F.3d at 306. Verizon's position that a plaintiff must satisfy standing requirements at every moment of the litigation is inconsistent with that important guidance from the Third Circuit.

Verizon's contrary argument relies on a misreading of certain language from *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997). Verizon presents the decision as holding that "[t]he standing requirement applies throughout 'all stages of review, not merely at the time the complaint is filed.'" ECF 47 at 1 (quoting *Arizonans for Off. Eng.*, 520 U.S. at 67.). But the quoted passage from that opinion simply discussed Article III justiciability requirements (of which both standing and mootness are a part) as a general matter. It did not collapse the distinction between standing and mootness as Verizon suggests.

## II.     Mr. Tiger Had Standing to Seek Abatement When He Filed the Complaint.[3]

"A risk of future injury may support standing if the threatened harm is 'certainly impending,' or there is a 'substantial risk' that the harm will occur. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). "[C]ases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about." *Amnesty Int'l USA*, 568 U.S. at 414 n.5. Rather, a plaintiff may proceed on a risk-based theory of injury where they allege "concrete evidence to substantiate their fears" rather than "mere conjecture[.]" *Id.* at 420.

An example illustrates the rule. Some plants, including alfalfa, reproduce through pollination. In *Monsanto Co. v. Geertson Seed Farms*, a group of farmers sued the government for allowing a type of genetically modified alfalfa to come to market because the farmers feared that bees which had taken pollen from genetically modified plants might land on their non-genetically modified plants and cause the resulting seed to have genetically modified characteristics. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 154 (2010). The farmers then backed this theory up with specific evidence. They presented evidence that bees have a range of two to ten miles and that the organic alfalfa farms at issue would be at least that close to genetically modified alfalfa farms. *Id.* at 154 n.3. The farmers also presented evidence that to counter this threat, they

---

[3] Plaintiff focuses primarily on his standing to seek abatement because Verizon conceded at oral argument that Mr. Tiger's change of employment would not moot his claim for medical monitoring. Oral Arg. Tr. 66:1-8. Verizon was correct to make this concession. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Plaintiffs are "not required to continue suffering the exact injury described in the complaint to maintain [his or] her entitlement to seek relief." *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 481 (3d Cir. 2016). This Court remains able to remedy Mr. Tiger's past exposure to Verizon's toxic lead cables through a medical monitoring program that would defray any out-of-pocket medical expenditures necessitated by Verizon's lead cables.

3

would need to spend money to test their crops for genetically modified characteristics. *Id.* at 154. This, the Supreme Court held, represented a "substantial risk" sufficient to support Article III standing to seek prospective relief. *Id.* at 153.

This permissive standard is even lower in cases which implicate human health. Standing rules are relaxed "when the future harm involves human suffering or premature death." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 45 (3d Cir. 2011). And the Supreme Court has implemented this principle by holding that plaintiffs have standing to seek prospective relief for future bodily injury in circumstances that would be far too speculative to support federal standing outside of the context of human health. Another example is useful. In the Price-Anderson Act, Congress imposed a monetary ceiling on the potential tort liability of private nuclear power plants. 42 U.S.C.A. § 2210(e). Following this, in *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, a group of people living nearby a nuclear power plant, which in the course of normal operation released small amounts of radiation, sued to have this cap declared unconstitutional. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74 (1978). The Supreme Court held that such plaintiffs had standing because "the emission of non-natural radiation into appellees' environment would also seem a direct and present injury, given our generalized concern about exposure to radiation and the apprehension flowing from the uncertainty about the health and genetic consequences of even small emissions like those concededly emitted by nuclear power plants."[4] *Id.*

---

[4] It is possible Verizon will argue that *Duke Power* has been implicitly overruled by subsequent developments in standing caselaw. But the Supreme Court has cautioned against holding that its precedents are "implicitly overruled" when they are merely "in tension with some other line of decisions" because "the prerogative of overruling its own decisions" is held by the Supreme Court. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). And there is no tension between *Duke Power* and later cases—human health issues are simply different than other forms of injury.

Mr. Tiger's claim for injunctive relief in the form of abatement is as well supported (indeed, more well supported) than the claims at issue in *Geertson Seed Farms* and is dramatically more supported than the claims at issue in *Duke Power*. As in *Geertson Seed Farms*, Mr. Tiger has alleged a clear path of contamination—lead in his workplace enters his body because he breathes it in and touches it in the course of his work. As in *Geertson Seed Farms*, Mr. Tiger has backed that theory of exposure up with evidence—a substantial body of literature, including Verizon's own studies, which show utility pole workers do ingest dangerous levels of lead in the course of their work. And Mr. Tiger goes further and has alleged that he is presently suffering from lead-related health conditions, including "mood changes, headaches, nausea, fatigue, irritability, muscle and joint pain, and constipation." First Amended Complaint, ECF 18, ¶ 15. That is more than enough to show standing at the time the complaint was filed.

### III. Mark Tiger's Claim for Abatement is Not Moot Because It Falls Within the Inherently Transitory Exception to Mootness.

"[I]n the class action context, special mootness rules apply for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action[.]" *Richardson v. Bledsoe*, 829 F.3d 273, 278–79 (3d Cir. 2016). "One such special rule is commonly referred to as the 'relation back doctrine.'" *Id.* at 279. "This doctrine permits courts to relate a would-be class representative's (now moot) claim for relief back in time to a point at which that plaintiff still had a personal stake in the outcome of the litigation." *Id.* "[T]he relation-back doctrine may apply in Rule 23 cases where it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013). "The principle applies to any situation where

5

composition of the claimant population is fluid, but the population as a whole retains a continuing live claim." 1 Newberg and Rubenstein on Class Actions § 2:13 (6th ed.).

"A claim is inherently transitory not only if there *exists* no plaintiff who could both establish standing at the outset of litigation and retain an active stake by the time class certification is decided, but also if it would be difficult to identify *which* prospective plaintiff that would be at the time of filing." *Dunn v. Dunn*, 148 F. Supp. 3d 1329, 1340 (M.D. Ala. 2015)[5] (emphasis original). "Whether claims are inherently transitory is an inquiry that must be made with reference to the claims of the class as a whole as opposed to any one individual claim for relief." *Amador v. Andrews*, 655 F.3d 89, 100 (2d Cir. 2011).

Courts have interpreted the inherently transitory exception to mootness flexibly. For example, in a putative class action on behalf of indigent people challenging a state's practice of suspending the driver's licenses of those unable to pay court costs, an indigent class representative who paid off their debts after unexpectedly receiving a financial windfall was allowed to continue representing the putative class because it was clear a class continued to exist and inherently uncertain whether any individual member of the class might similarly come into extra money. *Motley v. Taylor*, No. 2:19-CV-478-WKW, 2021 WL 2556152, at *3 (M.D. Ala. June 22, 2021). Similarly, a nursing home resident seeking to represent a putative class of nursing home residents who could receive care in less restrictive home-based settings was allowed to continue representing a putative class even after being released from his nursing home—despite the fact that "there are certainly individuals [within the putative class's definition] whose claims will not expire within

---

[5] At oral argument, Plaintiff's counsel erroneously conflated the fact pattern of the *Dunn* case with that of a different Middle District of Alabama case regarding the application of the inherently transitory exception to mootness, *Motley v. Taylor*, No. 2:19-CV-478-WKW, 2021 WL 2556152, at *3 (M.D. Ala. June 22, 2021). The *Taylor* case is discussed in greater depth below.

6

the time it would take to litigate their claims[.]" *Thorpe v. D.C.*, 916 F. Supp. 2d 65, 67 (D.D.C. 2013). So too, certain persons released from prison were allowed to continue representing a class of prisoners alleging systemic sexual abuse in a prison, notwithstanding that there is a substantial range in the length of one's confinement in prison. *Amador*, 655 F.3d at 100.

Verizon does not appear to dispute that there is uncertainty about how long any individual utility worker will be willing to accept the health risks associated with the company's abandoned lead cables and remain at their job. As Verizon's counsel observed at oral argument, "[t]here's employees who work at the same place for 20 years, there's employees who work at the same place for six years, there's employees who work at a place for a day." Oral Arg. Tr. 15:4-9. Rather, Verizon's primary argument against application of the inherently transitory exception appears to be that in certain circumstances, utility workers may stay at their jobs for long periods of time. But "the Supreme Court, as well as lower courts, have emphasized that whether the claim is inherently transitory depends upon the uncertainty, not the ultimate fact, of the claim's longevity." *Taylor*, 2021 WL 2556152 at *7. The possibility that a particular utility worker may stay at their job for a longer period of time than Mr. Tiger does not alter the reality that whether any given utility worker will stay at their job is an inherently variable question.

That is particularly true since Mr. Tiger left his job because of his concerns regarding the effect of continued exposure to Verizon's lead cables on his health—a concern any potential class representative for this matter would naturally share. Courts have long distinguished between true voluntary separation from a position and resignation precipitated by objectively unreasonable workplace conditions. *Cf. Angeloni v. Diocese of Scranton*, 135 F. App'x 510, 513 (3d Cir. 2005) ("To find constructive discharge, a court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them

would resign."). Likewise, courts have long recognized that public policy considerations permit employees to act outside the ordinary bounds of the at-will employment relationship when confronted with dangerous workplace conditions. *Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1180 (Pa. Super. Ct. 1989) (employee stated wrongful discharge claim based on termination for reporting another employee's exposure to radiation to regulatory agency); *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 374 (Ill. 1985) (employee stated wrongful discharge claim based on refusal to work with radioactive substances without proper safety equipment); *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 910 (D. Nev. 1993) (recognizing state law public policy tortious discharge cause of action would cover "refusing to work under unreasonably dangerous conditions"). These considerations justify treating Mr. Tiger's decision to leave his job differently than the Court might otherwise treat an employee's decision to leave their job. It is unreasonable to ask a putative class plaintiff to choose between endangering his own health and foregoing his ability to seek relief for a class of people who continue to be injured by another's misconduct. Verizon cites no case in which a court has imposed such a requirement on a putative class representative.

Indeed, Verizon's counsel recognized at oral argument that the reasoning that "[i]t would be unfair to say that [opposing counsel's] client has to decide that he's going to continue to be exposed to the toxins in order to stay in the suit" was a "compelling argument[.]" Oral Arg. Tr. 66:1-4. Verizon's counterargument was to insist that such a change in jobs would still eliminate Mr. Tiger's standing to sue. Oral Arg. Tr. 66:9-17. But as discussed above, "sometimes a suit filed on Monday will be able to proceed even if, because of a development on Tuesday, the suit would have been dismissed for lack of standing if it had been filed on Wednesday." *Hartnett*, 963 F.3d at 306. Verizon errs by mixing the issues of standing and mootness.

"One of the central advantages of the class action device is its ability to preserve transitory claims for judicial review." 1 Newberg and Rubenstein on Class Actions § 2:13 (6th ed.). Mr. Tiger's change of jobs does not deprive the Court of the authority to grant relief to the continuing class of utility pole workers exposed to toxic chemicals as a result of Verizon's misconduct. Rather, this case fits comfortably within the exception for inherently transitory claims. Verizon's motion to dismiss should be denied. In the event the Court dismisses any portion of Mr. Tiger's complaint, Mr. Tiger requests leave to amend.

Dated: November 14, 2024	Respectfully submitted,

*/s/ Scott. A George*
Scott A. George
SEEGER WEISS LLP
325 Chestnut St., Suite 917
Philadelphia, PA 19106
Tel: 215-564-2300
sgeorge@seegerweiss.com

Christopher L. Ayers
Christopher A. Seeger
David Buchanan
Nigel Halliday
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel: 973-639-9100
cayers@seegerweiss.com
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
nhalliday@seegerweiss.com

Eric S. Dwoskin
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel: 561-849-8060
edwoskin@sdwowas.com

Nicholas F. Wasdin

DWOSKIN & WASDIN LLP
110 N. Wacker Dr.
Chicago, IL 60606
Tel: 312-343-5361
nwasdin@dwowas.com

*/s/ D. Aaron Rihn*
D. Aaron Rihn
ROBERT PEIRCE & ASSOCIATES, P.C.
PA Bar ID: 85752
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel: 412-281-7229
arihn@peircelaw.com

*Counsel for Plaintiff*